# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

SHANE T. ROBBINS,

>                     Petitioner,

>          v.                              Case No. 15-CV-1343

RANDALL HEPP,

>                     Respondent.

---

# DECISION AND ORDER

---

## 1. Procedural Background

Shane T. Robbins, who is incarcerated pursuant to the judgment of a state court, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Proceedings on his petition were stayed for a lengthy period so he could exhaust his remedies in state court (*see* ECF Nos. 13, 21), but those proceedings are now complete (ECF No. 21); *see also State v. Robbins*, No. 2012AP2805-CRNM, 2014 Wisc. App. LEXIS 1074 (Ct. App. Apr. 1, 2014); *State v. Robbins*, 2019 WI App 58, 389 Wis. 2d 103, 936 N.W.2d 399, 2019 Wisc. App. LEXIS 511.

Although Robbins's petition had initially been assigned to Judge Rudolph T. Randa, it was reassigned to this court following Judge Randa's death. All parties have

consented to have this court resolve the petition in accordance with 28 U.S.C. § 636(c) (ECF Nos. 19, 20), and the petition is now ready for resolution.

Robbins's claims are difficult to follow, and not surprisingly he complains that the Wisconsin Court of Appeals did not understand his arguments. (*See, e.g.*, ECF No. 44 at 2-3.) Because Robbins is proceeding pro se, the court must liberally construe his pleadings. But that does not excuse a pro se litigant's failure to follow directions, comply with rules, or present matters in an understandable manner.

The court notes that Robbins requested the appointment of counsel (ECF No. 28), but his request was directed at seeking help correcting what he perceived as the Wisconsin Court of Appeals' error in construing his motion as one for postconviction relief under Wis. Stat. § 974.06 when he captioned it as "Amendment of State Remedies Pursuant to Rule 59(e)." (ECF No. 28 at 1.) In denying his motion for the appointment of counsel, the court incorrectly referred to "recruiting" an attorney to represent Robbins. (ECF No. 30.) While such language is appropriate in the context of pro se litigants pursuing general civil claims, appointed counsel is available to habeas petitioners under the Criminal Justice Act if the court concludes that the petitioner is financially unable to obtain counsel and "that the interests of justice so require" the appointment of counsel. 18 U.S.C. § 2254(a)(2)(B).

Because the reason Robbins was seeking counsel was to correct an alleged error in how the Wisconsin Court of Appeals construed his petition, the interests of justice

did not require the appointment of counsel. He failed to demonstrate that the court's construction was material, much less wrong. In his motion before the state court Robbins purported to rely on Rule 59(e) of the Federal Rules of Civil Procedure, but the rules of federal procedure do not apply in state court proceedings. Thus, the court of appeals apparently presumed he was bringing the action under the state law equivalent of Rule 59(e), which is Wis. Stat. § 805.15. But because a motion for a new trial was improper, the court of appeals reasonably construed the motion as coming under the only potentially applicable procedural provision, Wis. Stat. § 974.06.

Turning to the substance of Robbins's claims, the court starts with his amended petition. (ECF No. 22.) He failed to identify "Grounds for Relief" in the section of the form where he was asked to do so. Instead, for "Ground One" he wrote simply, "Same Amended Motion Pg. 3-4." (ECF No. 22 at 6.) In the portion of the form where he was asked to provide supporting facts, he wrote only, "Same." (ECF No. 22 at 6.) This pattern continued for the first four grounds for relief, but with the page numbers changing. (ECF No. 22 at 7-9.) But when asked to identify the facts supporting his fourth ground for relief he just listed "Grounds 5" through "Grounds 12" (without indicating what those grounds might be), indicated "See Amendment of State Remedies," and offered page numbers. (ECF No. 22 at 9.)

The court understands these references in his amended petition to correspond to a document docketed as ECF No. 22-1 and on which is written the heading

"Amendment of State Remedies." Thus, the court understands Robbins to be presenting the following grounds for relief:

1. "Right to be informed:" He was not adequately informed that the state was alleging that a sexual assault on April 6, 2010, happened on a couch. (ECF No. 22-1 at 3-4.)

2. "Right to impartial jury:" It is possible that the jury was not unanimous because "[t]he State presented more acts than there were charges." (ECF No. 22-1 at 4-5.)

3. "Right to impartial jury:" The trial judge allowed biased jurors to remain on the jury. (ECF No. 22-1 at 5-6.)

4. "Right to witness:" Trial counsel did not call witnesses that Robbins wanted to testify. (ECF No. 22-1 at 6.)

5. "Right to witness:" "Trial counsel was ineffective for failing to hire an expert witness." (ECF No. 22-1 at 7.)

6. "Right to notice:" "The defendant did not receive any notice of the second alleged assault (on the couch) …." (ECF No. 22-1 at 7.)

7. "Insufficient evidence:" It appears that Robbins is arguing that there was insufficient evidence because the victim said she did not remember certain details. (ECF No. 22-1 at 8.)

8. "Insufficient evidence:" "[T]he testimony and evidence does not support the finding in the [sexual assault nurse examiner] exam report." (ECF No. 22-1 at 8.)

9. "Prosecutor mis-conduct:" The prosecutor engaged in "mis-conduct by false mis-leading testimony." (ECF No. 22-1 at 8-9.)

10. "Prosecutor mis-conduct:" The prosecutor's closing argument was misleading.

11. "Prosecutor mis-conduct:" Photographs of the examination of the victim were not presented as evidence and thus must have been exculpatory. (ECF No. 22-1 at 10.)

12. "Prosecutor mis-conduct:" The forensic interview of the victim's brother was exculpatory but not turned over to the defense. (ECF No. 22-1 at 10.)

## 2. Facts

On April 6, 2010, Robbins's girlfriend, Jessica,[1] went shopping and left her five-year-old daughter, Emma, four-year-old son, and infant daughter at home in the care of Robbins. (ECF No. 26-10 at 105-06.) When she arrived home, Jessica found Robbins and Emma by the bathroom, and Robbins told her that he and Emma had been taking a nap. (ECF No. 26-10 at 107.) Later that evening, as Jessica prepared to give Emma a bath, Emma began crying while she sat on the toilet and reported that her vagina hurt. (ECF No. 26-10 at 108.) Jessica observed that Emma's vagina was red and "[t]here was like slime on it." (ECF No. 26-10 at 108.) Jessica proceeded to give Emma a bath in an effort to ease Emma's pain.

Jessica asked Emma if someone had hurt her, and after about 30 minutes of questioning, during which Emma initially said that she had rubbed herself (ECF No. 26-10 at 127), Emma eventually said, "Shane did it." (ECF No. 26-10 at 109.) Emma told Jessica that Robbins assaulted her first on the couch and then took her to the bedroom where he put his penis in her mouth. (ECF No. 26-10 at 139.) Emma reported to Jessica that Robbins had also assaulted her about a month earlier when she was home sick. (ECF No. 26-10 at 140.)

---

[1] For the sake of privacy and clarity, the court relies on pseudonyms for the victim and her mother.

Jessica confronted Robbins and he initially denied doing anything. But later he repeatedly said, "What do you want me to say?" before saying, "She was lying next to me and her butt was up against me and I got aroused. What do you want me to say? She knew what she was doing." (ECF No. 26-10 at 110.) This caused Jessica to break down and ask Robbins, "Why did you do this to her, how could you hurt my baby?" (ECF No. 26-10 at 110.) To this Robbins responded, "It's not like I penetrated her. I just rubbed her a little bit." (ECF No. 26-10 at 110.)

When Jessica said she was calling the police, Robbins left (ECF No. 26-10 at 110) and went to his father's home, where he was soon arrested (ECF No. 26-10 at 102). Robbins's father testified that Robbins said he had come to the home that night because he "did something bad." (ECF No. 26-12 at 74.) According to his father, Robbins told him that "some girl came up on the couch and he was drunk and he starting [sic] rubbing on his crotch area with her butt or whatever it was, and supposedly he ejaculated or something and he felt bad and ran away." (ECF No. 26-12 at 74.)

Later that night Emma was examined by a sexual assault nurse examiner, who observed redness in Emma's vaginal area (ECF No. 26-11 at 34) and two small scrapes around her vagina (ECF No. 26-11 at 34-35). The nurse collected swabs from Emma's body for DNA testing. (ECF No. 26-11 at 38-39.) Male DNA was detected from one of the swabs of Emma's labia minora, and Robbins "was included as a possible source" of that DNA. (ECF No. 26-12 at 17-19, 31-32.)

At trial Emma was asked about the "first time," and she testified that it occurred when her mom was shopping. (ECF No. 26-12 at 45-47.) She said she was lying on her back on the couch, Robbins removed her pants and underwear, and "put his wiener in my private." (ECF No. 26-12 at 45.) Later that same day, she went to the bedroom where Robbins was and he again "put his wiener in my private." (ECF No. 26-12 at 47-48.) Emma also reported another incident that she believed happened on the couch and the "[s]ame thing" happened. (ECF No. 26-12 at 53.)

The jury found Robbins guilty of first-degree sexual assault of a child for sexual intercourse occurring on April 6, 2010 (Count 2, ECF No. 26-7 at 56), first-degree sexual assault of a child for sexual contact occurring between December 1, 2009 and April 5, 2010 (Count 3, ECF No. 26-7 at 57), felony child abuse for the injuries Emma sustained on April 6, 2010 (Count 4, ECF No. 26-7 at 57), exposing his genitals to a child between December 1, 2009 and April 6, 2010 (Count 6, ECF No. 26-7 at 57), and causing a child to expose her genitals between December 1, 2009 and April 6, 2010 (Count 7, ECF No. 26-7 at 58). (ECF Nos. 26-1 at 1; 26-13 at 13-15.)

## 3. Analysis

### 3.1. Robbins's Failure to Submit an Initial Brief

In ordering the respondent to answer Robbins's amended petition, the court ordered Robbins to file a brief in support of his petition within 28 days after the

respondent filed his answer. (ECF No. 23 at 2.) The court then gave the respondent 28 days to file a response, and Robbins another 28 days to reply. (ECF No. 23 at 2.)

The respondent answered the petition on January 27, 2021 (ECF No. 26) and supplemented his response on February 2, 2021 (ECF No. 27). Robbins filed a motion asking for 14 more days to file a brief in support of his petition. (ECF No. 29.) The court granted that motion. (ECF No. 30.) On March 1, 2021, Robbins filed two documents. The first was a two-page document captioned, "Petitioner's Response to States [sic] False Claims." (ECF No. 31.) The second was one page and captioned, "Motion for Writ of Error." (ECF No. 32.) In both, he complains about the Wisconsin Court of Appeals construing his motion as one under Wis. Stat. § 974.06 rather than Rule 59(e). This court denied the "Motion for Writ of Error." (ECF No. 34.) As noted above, Rule 59(e) was inapplicable, and it was inconsequential that the court of appeals construed the motion as one under Wis. Stat. § 974.06. Because in neither filing did Robbins address the merits of his petition, the court gave Robbins a final opportunity to submit his required brief in support of his petition. (ECF No. 34 at 3-4.)

On March 11, 2021, Robbins filed what is captioned, "Re: Petitioner's Response to States [sic] False Claims." (ECF No. 36.) Again, rather than addressing the merits of his claims, Robbins argued that the Wisconsin Court of Appeals erred in construing his motion as one under Wis. Stat. § 974.06. (ECF No. 36.)

The respondent submitted a brief in opposition (ECF No. 37), and Robbins, after a few extensions of time, eventually filed a document captioned "Petitioners [sic] Argument with Legal Authorities." (ECF No. 44.) The respondent argues that Robbins abandoned his claims by failing to brief them. (ECF No. 37 at 2.)

Insofar as "Petitioners [sic] Argument with Legal Authorities" (ECF No. 44) was intended to be his brief in support of his petition, it was untimely. The court was very clear that Robbins was required to submit a brief in support no later than May 5, 2021. (ECF No. 34.) What he submitted six months later, on November 16, 2021, is not even properly a reply brief because it almost entirely raises arguments not addressed in his March 1, 2021 (ECF Nos. 31; 32) or May 11, 2021 (ECF No. 36) filings. *See Griffin v. Bell*, 694 F.3d 817, 822 (7th Cir. 2012) ("arguments raised for the first time in a reply brief are deemed waived"). But even then he does materially address his claims and instead seems to refer to some other document he identifies as "Habeas" for argument. (ECF No. 44 at 2.) It is unclear to what document he refers with his reference to "Habeas," but the citations appear to again correspond to the document he filed as ECF No. 22-1 and captioned, "Amendment of State Remedies."

It is clear that Robbins has an extremely hard time navigating the procedures necessary to properly present his claims. But "[e]ven pro se litigants are obliged to follow procedural rules." *McCurry v. Kenco Logistics Servs., LLC*, 942 F.3d 783, 793 fn. 2 (7th Cir. 2019). His failures go beyond the sorts of mistakes or misunderstandings

common among pro se litigants. They appear to be willful failures to comply with explicit court orders. Because his failures appear volitional, the court again does not find that the interest of justice require the appointment of counsel.

Because Robbins failed to comply with this court's order to submit a brief in support of his habeas petition, he abandoned his claims and his petition must be denied.

Even his final submission, which he captioned, "Petitioners [sic] Argument with Legal Authorities," fails to develop any coherent argument for relief, much less an argument grounded in the narrow and high standard of review that generally applies to federal habeas petitions. The closest he comes to presenting authority to support his claims is a collection of what appear to be copy and pasted excerpts from cases and a treatise on federal habeas law. Few appear relevant to any claim. And, in any event, never does Robbins connect these excerpts to a claim for relief.

The most cogent presentation of his claims found in his submissions to this court is in the document captioned, "Amendment of State Remedies" that he submitted with his amended petition. Even if the court were to consider that document (and all the other documents he submitted to this court), as explained below Robbins's claims would still fail.

### 3.2. Adequate and Independent State Law Grounds

In denying Robbins's second appeal the Wisconsin Court of Appeals concluded that the claims identified above as numbers 2, 6, 10, 11, and 12 were barred under *State v. Escalona-Naranjo*, 185 Wis. 2d 168, 517 N.W.2d 157 (1994), which bars the state courts from considering claims for post-conviction relief that could have been raised in a direct appeal. *State v. Robbins*, 2019 WI App 58, ¶ 33, 389 Wis. 2d 103, 936 N.W.2d 399.

"A claim will be procedurally defaulted—and barred from federal review—if the last state court that rendered judgment 'clearly and expressly states that its judgment rests on a state procedural bar.'" *Lee v. Foster*, 750 F.3d 687, 693 (7th Cir. 2014) (quoting *Harris v. Reed*, 489 U.S. 255, 263 (1989)). "Accordingly, [federal courts] will not entertain questions of federal law in a habeas petition when the state procedural ground relied upon in the state court 'is independent of the federal question and adequate to support the judgment.'" *Id.* (quoting *Coleman v. Thompson*, 501 U.S. 722, 729 (1991)). "An independent state ground will be found 'when the court actually relied on the procedural bar as an independent basis for its disposition of the case.' A state law ground is adequate 'when it is a firmly established and regularly followed state practice at the time it is applied.'" *Id.* (quoting *Thompkins v. Pfister*, 698 F.3d 976, 986 (7th Cir. 2012)).

Wisconsin's *Escalona-Naranjo* rule has long been recognized as "an adequate and independent state procedural ground precluding federal habeas review." *Maday v. Jess*,

No. 18-cv-596-bbc, 2022 U.S. Dist. LEXIS 18658, at *8 (W.D. Wis. Feb. 2, 2022) (citing *Perry v. McCaughtry*, 308 F.3d 682, 690-92 (7th Cir. 2002); *Howlett v. Richardson*, 729 F. App'x 461, 465 (7th Cir. 2018)). The rule was firmly established and regularly followed at the time of the Wisconsin Court of Appeals' 2019 decision.

Because the state court denied Robbins relief on state procedural grounds, this court can consider the merits of the claims identified above as numbers 2, 6, 10, 11, and 12 only if he demonstrates that the failure to consider the claims would result in a "fundamental miscarriage of justice." *Thomas v. Williams*, 822 F.3d 378, 386 (7th Cir. 2016) (quoting *Coleman v. Thompson*, 501 U.S. 722, 748 (1991)). "To demonstrate a fundamental miscarriage of justice, a petitioner must show that 'a constitutional violation has probably resulted in the conviction of one who is actually innocent' such that 'it is more likely than not that no reasonable juror would have convicted [the petitioner] in the light of the new evidence.'" *Id.* at 386-87 (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).

At no point in any of his submissions has Robbins presented a reason for overlooking the state court's denial of his claims on adequate and independent state law grounds. It is unnecessary to discuss all that Robbins presents, but the court finds it appropriate to make two points.

First, Robbins provided the court with excerpts of the dissenting opinion from *Escalona-Naranjo.* (ECF No. 44 at 21-24.) Insofar as Robbins is suggesting that these

excerpts reflect Wisconsin law, the court notes that a dissenting opinion by two justices of the Wisconsin Supreme Court is not controlling precedent. This court is bound by the majority opinion of the court.

Second, Robbins is correct that, "[w]hen a state court declines to review the merits of a petitioner's claim on the ground that it has done so already, it creates no bar to federal habeas review." *Cone v. Bell*, 556 U.S. 449, 466 (2009). In Wisconsin, the *Witkowski* rule, *see State v. Witkowski*, 163 Wis. 2d 985, 990, 473 N.W.2d 512, 514 (Ct. App. 1991), bars state courts from reconsidering in collateral attacks issues that had been raised in a direct appeal. The court of appeals applied that rule to reject the claims identified above as numbers 1, 3, 4, 5, 7, 8, and 9.

But the *Witkowski* rule is distinct from the *Escalona-Naranjo* rule. Significantly, claims rejected under *Witkowski* are not procedurally defaulted as they are when rejected under *Escalona-Naranjo. Warren v. Baenen*, 712 F.3d 1090, 1098 (7th Cir. 2013). Consequently, the claims that the court of appeals rejected under *Witkowski*—identified above as numbers 1, 3, 4, 5, 7, 8, and 9—have not been procedurally defaulted. The application of the *Witkowski* rule means only that the court of appeals' decision on direct appeal, not its later decision, is the decision the federal court reviews in considering a habeas petition. *See Warren*, 712 F.3d at 1098. However, the claims that the court of appeals rejected under *Escalona-Naranjo*—identified above as numbers 2, 6, 10, 11, and

12—have been procedurally defaulted because the court of appeals denied relief for adequate and independent state law grounds.

### 3.3. Standard of Review Applicable to Robbins's Claims

As noted, when the Wisconsin Court of Appeals rejects a claim under *Witkowski*, it is then the court of appeals' decision resolving the direct appeal that the federal court reviews. *Warren*, 712 F.3d at 1098. However, if a claim rejected under *Witkowski* was not actually presented and resolved in the direct appeal, then rather than applying the deferential standard of review created by the Antiterrorism and Effective Death Penalty Act (AEDPA), the federal court reviews the claim under the pre-AEDPA standard. *Warren*, 712 F.3d at 1098. Thus, this court must review the no merit proceedings to determine what claims were presented to the court of appeals.

Based on the court's review of the no merit submissions, it finds that the claims Robbins presents as claims 3, 4, 5, 7, and 8 were presented in his direct appeal. Therefore, those claims are subject to the AEDPA standard of review.

However, the court finds that the claims Robbins presents as claims 1 and 9 were not presented in his first appeal. While the court of appeals in 2019 probably could have rejected them under *Escalona-Naranjo*, it did not. Therefore, adequate and independent state law grounds do not exist for rejecting those two claims. As a result, claims 1 and 9 are subject to the pre-AEDPA standard of review. *Warren*, 712 F.3d at 1098.

### 3.4. Fair Presentment and Exhaustion of Claims 4, 5, and 9

The respondent nonetheless argues that Robbins procedurally defaulted claims 4, 5, and 9 because he did not include those claims in his first petition for review. (ECF No. 37 at 14.)

The court agrees that Robbins did not include claim 9 in his first petition for review as part of his direct appeal. But, as noted above, the claim had not been presented to the court of appeals, either. It was first presented only as part of Robbins's collateral challenge to his conviction. Consequently, he was not required to present it in his petition for review and has not procedurally defaulted the claim by having failed to do so.

Robbins fairly presented claims 4 and 5 in his first petition for review by referring to the factual basis for the claims (*see, e.g.*, ECF No. 27-4 at 18 (arguing that counsel was ineffective for failing to call Robbins's desired witnesses and for failing to call an expert)) and citing to the controlling standard regarding the effective assistance of counsel, *Strickland v. Washington*, 466 U.S. 668 (1984) (ECF No. 27-4 at 4, 15). *See Lockheart v. Hulick*, 443 F.3d 927, 929 (7th Cir. 2006). While Robbins's submission may have been insufficient to satisfy the requirement of fair presentment in other circumstances, given the context of the no merit report and the independent duties imposed on courts in such instances, *see, e.g.*, *Anders v. California*, 386 U.S. 738, 744, the court will err on the side of finding Robbins's presentment sufficient to avoid default.

### 3.5. AEDPA Standard of Review

A federal court may consider habeas relief for a petitioner in state custody "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Following the passage of the Antiterrorism and Effective Death Penalty Act (AEDPA), a federal court is permitted to grant relief to a state petition under 28 U.S.C. § 2254 only if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2). This is a "stiff burden." *Jean-Paul v. Douma*, 809 F.3d 354, 359 (7th Cir. 2015). "The state court's ruling must be 'so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Id.* (quoting *Carter v. Douma*, 796 F.3d 726, 733 (7th Cir. 2015)); *see also Harrington v. Richter*, 562 U.S. 86, 102 (2011).

"Clearly established federal law" refers to a holding "of the United States Supreme Court that existed at the time of the relevant state court adjudication on the merits." *Caffey v. Butler*, 802 F.3d 884, 894 (7th Cir. 2015) (citing *Greene v. Fisher*, 132 S. Ct. 38, 44 (2011); *Williams v. Taylor*, 529 U.S. 362, 412 (2000)). "A decision is 'contrary to' federal law if the state court applied an incorrect rule—*i.e.*, one that 'contradicts the

governing law' established by the Supreme Court—or reached an outcome different from the Supreme Court's conclusion in a case with 'materially indistinguishable' facts." *Id.* (quoting *Williams*, 529 U.S. at 405-06). A decision involves an unreasonable application of federal law if the state court identified the correct governing principle but applied that principle in a manner with which no reasonable jurist would agree. *Id.*; *see also Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003). "A court's application of Supreme Court precedent is reasonable as long as it is 'minimally consistent with the facts and circumstances of the case.'" *Williams v. Thurmer*, 561 F.3d 740, 743 (7th Cir. 2009) (quoting *Schaff v. Snyder*, 190 F.3d 513, 523 (7th Cir. 1999)). Thus, a federal court could have the "firm conviction" that a state court's decision was incorrect but, provided that error is not objectively unreasonable, nonetheless be required to deny the petitioner relief. *Lockyer*, 538 U.S. at 75-76.

### 3.6. Right to an Impartial Jury (Claim 3)

"The due process clause of the Fourteenth Amendment entitles a state criminal defendant to an impartial jury, which is to say a jury that determines guilt on the basis of the judge's instructions and the evidence introduced at trial, as distinct from preconceptions or other extraneous sources of decision." *Oswald v. Bertrand*, 374 F.3d 475, 477 (7th Cir. 2004) (citing *Morgan v. Illinois*, 504 U.S. 719, 726 (1992); *Patton v. Yount*, 467 U.S. 1025, 1037 n. 12 (1984); *Irvin v. Dowd*, 366 U.S. 717, 721-23 (1961); *United States v. McClinton*, 135 F.3d 1178, 1185-86 (7th Cir. 1998); *United States v. Angiulo*, 897 F.2d 1169,

1182-83 (1st Cir. 1990)). If the court becomes aware of possible juror bias it must "determine the circumstances, the impact thereof upon the juror, and whether or not it was prejudicial." *Oswald*, 374 F.3d at 478 (quoting *Remmer v. United States*, 347 U.S. 227, 230 (1954); citing *United States v. Thomas*, 463 F.2d 1061, 1063-64 (7th Cir. 1972); *United States v. Humphrey*, 208 F.3d 1190, 1198-99 (10th Cir. 2000); *United States v. Davis*, 177 F.3d 552, 556-57 (6th Cir. 1999); *Howard v. Moore*, 131 F.3d 399, 422 (4th Cir. 1997) (en banc)). The adequacy of the court's inquiry "is a function of the probability of bias; the greater that probability, the more searching the inquiry needed to make reasonably sure that an unbiased jury is impaneled." *Oswald*, 374 F.3d at 480.

A juror need not be a blank slate to be unbiased. "Everyone brings to a case a set of beliefs that may incline him in one direction or another." *Griffin*, 694 F.3d at 824 (quoting *Thompson v. Altheimer & Gray*, 248 F.3d 621, 625 (7th Cir. 2001)); *see also Irvin v. Dowd*, 366 U.S. 717, 723 (1961) ("To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard."); *Oswald v. Berge*, No. 01-C-689, 2006 U.S. Dist. LEXIS 41672, at *17 (E.D. Wis. June 21, 2006) ("[J]urors undoubtedly bring preconceptions, their thought processes, and their life experiences into the courtroom."). "[I]t is virtually impossible to shield jurors from every contact or influence that might theoretically affect their vote." *Smith v. Phillips*, 455 U.S. 209, 217 (1982). A juror is biased, in the sense that the Constitution is

concerned, if she "expressed an irrational or unshakeable bias that indicated an inability or unwillingness to faithfully and impartially apply the law." *Griffin*, 694 F.3d at 824.

During voir dire the prosecutor asked a routine question of whether any prospective juror had any "strong feelings" about the fact that Robbins was accused of sexually assaulting a five-year-old. (ECF No. 26-10 at 41.) Not surprisingly, some jurors did. The court excused a juror who said she would have a problem being fair and impartial because she could not "imagine anyone doing that to my son." (ECF No. 26-10 at 42.) Another juror expressed that he would have a hard time listening to the evidence because he had a three-year-old brother. (ECF No. 26-10 at 43.) When the juror responded affirmatively to the prosecutor's follow-up question, "[D]o you think that that would cause you to have a problem with sitting on this case and hearing the evidence?" the judge asked the prosecutor: "Do you want a trial or not? You're gonna lose everybody if any [sic] everybody feels that way." (ECF No. 26-10 at 43.)

The prosecutor responded by noting that the parties had peremptory strikes (ECF No. 26-10 at 44), by which it appears he was suggesting it was unnecessary to excuse every prospective juror who may indicate difficulty with the fact that the case involved child sexual assault. The court nonetheless excused the juror and noted that there were only six jurors left in the pool beyond the 23 who were being questioned. (ECF No. 26-10 at 45.)

Immediately following this was the following exchange with another prospective juror and the prosecutor:

A: Yeah, between my girlfriend and I we have six children together and, you know, I can try to be unbiased in my opinion but, I mean, I think I would have a hard time under the circumstances with what he's been accused of.

Q: Okay, do you think that you would still be able to listen to the evidence?

A: Yes.

Q: Okay, do you still think you could be fair about it though?

A: I can sure try.

(ECF No. 26-10 at 45.) The juror was not removed for cause, neither party removed him with a peremptory strike, and he sat on the jury. (ECF Nos. 26-10 at 58; 26-13 at 11.)

The court of appeals resolved the issue of whether any juror was biased by stating, "The circuit court is in a much better position than this court to determine if a potential juror's response is sincere. The court determined the juror could be fair and that finding is not clearly erroneous." *Robbins*, 2014 Wisc. App. LEXIS 1074, at *6.

The circuit court never explicitly determined that the juror's response was sincere and that he was unbiased, although that is implied by the fact that the judge did not strike the juror for cause. Although it would have been preferable if the trial court's inquiry had been more searching and the juror's assurances less equivocal, the trial court nonetheless undertook a sufficient investigation that was "reasonably calculated

to resolve the doubts raised about the juror's impartiality." *Oswald*, 374 F.3d at 481 (quoting *Dyer v. Calderon*, 151 F.3d 970, 974-75 (9th Cir. 1998) (en banc)). The juror's assurances that he would listen to the evidence and try to be fair were all that was required. After all, a promise to try to be fair is really all a court can demand of any prospective juror.

The court of appeals also reasonably rejected the suggestion that a different juror "should have been stricken for cause because she 'has been or knows someone that's been assaulted." *Robbins*, 2014 Wisc. App. LEXIS 1074, at *6 (internal quotation marks omitted). The court of appeals noted, "However, the potential juror stated her experience would not cause her any difficulty listening to this kind of a case and being fair to both sides." *Id.* at *6 (brackets and quotation marks omitted). The juror's answers fell far short of suggesting constitutional bias.

Robbins has failed to show that the court of appeals' decision rejecting his claim of juror bias was contrary to or involved an unreasonable application of clearly established federal law. Accordingly, this claim does not entitle him to relief.

### 3.7. Ineffective Assistance of Counsel (Claims 4 and 5)

Claims of ineffective assistance of counsel are governed by the well-established two-prong approach set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Hicks v. Hepp*, 871 F.3d 513, 525 (7th Cir. 2017). A petitioner must demonstrate both that his attorney's performance was deficient and that he was prejudiced as a result. *Id.* at 525-

Case 2:15-cv-01343-WED   Filed 02/23/22   Page 21 of 33   Document 45

26. The first prong "requires that the petitioner demonstrate that counsel's representation fell below an objective standard of reasonableness." *Id.* at 525. "What is objectively reasonable is determined by the prevailing professional norms." *Id.* But there is a wide range of permissible conduct, and "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* (quoting *Strickland*, 466 U.S. at 690). The prejudice prong "requires the petitioner to demonstrate a 'reasonable probability that, but for counsel's unprofessional errors,' the outcome would have been different." *Id.* at 526 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 127 (2009)).

When a claim of ineffective assistance of counsel is presented in a habeas petition, the petitioner faces "a high hurdle." *Hicks*, 871 F.3d at 525. "The Supreme Court has instructed that under these circumstances, [the federal court] must employ a 'doubly deferential' standard, one which 'gives both the state court and the defense attorney the benefit of the doubt.'" *Id.* (quoting *Burt v. Titlow*, 571 U.S. 12, 15 (2013)).

### 3.7.1. Failure to Call Certain Lay Witnesses (Claim 4)

Robbins argues that his trial counsel should have called Emma's four-year-old brother (ECF No. 26-10 at 62, 105) to testify because he was reportedly sitting two feet away during one of the alleged assaults. (ECF No. 22-1 at 6.) Robbins states that the brother reported in a forensic interview that he did not observe an assault. (ECF Nos. 26-7 at 54; 27-1 at 7; 27-4 at 7, 21; 44 at 1.) It does not appear, however, that Robbins has

provided the court with a copy of the forensic interview. But even presuming that Robbins is accurate that Emma's brother did not report seeing Robbins sexually assault Emma, it is easy to recognize why a reasonable attorney would not want to call a very young child to testify. Child witnesses are extremely unpredictable and there would be little assurance that his trial testimony would be consistent with his forensic interview. (*Cf.* ECF No. 26-12 at 59-60 (discussing inconsistencies in Emma's testimony and her prior statements).) Moreover, Emma did not testify that her brother was present during the assault on the couch (ECF No. 26-12 at 43-62), and thus the fact that her brother did not report seeing the assault would be of little relevance. Robbins has failed to demonstrate that counsel was ineffective for not calling Emma's brother to testify.

Robbins also asserts that counsel should have called as a witness a man who lived in the home with Emma, her siblings, Jessica, and Robbins. (ECF No. 22-1 at 6.) Robbins asserts that this witness would have been able to testify to the credibility of Emma and Jessica. However, Robbins does not provide any specific details as to what this man may have testified to. The details are important because evidence as to the credibility of a witness or victim is admissible in only limited circumstances. Moreover, the court cannot assess the reasonableness of counsel's decision or whether the decision was prejudicial without knowing the details. Consequently, Robbins has failed to show that counsel was ineffective for not calling this witness.

Finally, Robbins argues that counsel should have called Robbins's mother to testify. Robbins states that she would have testified that Jessica kept changing her story and said she did not mean to call the police but did so because she was confused and did not know what to do. (ECF No. 22-1 at 6.)

Robbin's mother's proffered testimony was of little relevance. Jessica had already testified that she was confused. (ECF No. 26-10 at 112.) Robbins has failed to demonstrate the trial counsel was ineffective for failing to call his mother to testify.

In sum, Robbins has failed to show that counsel was ineffective for failing to call any of these witnesses, much less that the court of appeals' decision rejecting Robbins's claims of ineffective assistance of counsel was contrary to or involved an unreasonable application of clearly established federal law. Accordingly, these claims do not entitle him to relief.

### 3.7.2. Failure to Call an Expert (Claim 5)

Emma initially reported that vaginal redness observed during a medical examination was cause by her rubbing her vagina. (ECF No. 26-10 at 127; 26-11 at 16-17; 26-12 at 58.) A sexual assault nurse examiner who examined Emma testified and was asked on cross-examination if the redness she observed (*see* ECF No. 26-11 at 34, 43) could have been caused by Emma having rubbed herself (ECF No. 26-11 at 46). She stated that in her experience a person generally does not engage in actions that cause abrasions and pain, but she was unable to answer the question because it was not her

area of expertise. (ECF No. 26-11 at 46.) Robbins argues that trial counsel was ineffective for not getting an expert who could offer the opinion that the sexual assault nurse examiner said she could not provide. (ECF Nos. 22-1 at 7; 26-3 at 11-12; 26-7 at 13; 27-4 at 18.)

There was nothing unreasonable about trial counsel's decision to forego an expert. It was sufficient to simply rely on Emma's own testimony that she caused the redness. And even if counsel could have found an expert to say that Emma could have caused the redness, any benefit from such testimony may well have been outweighed by what the state likely could have then elicited on cross-examination. If the state questioned the defense expert regarding the other conclusions of the state's nurse, such confirmation from a defense expert could have been highly damaging to the defense's case.

Robbins has failed to show that counsel was ineffective for failing to call an expert witness, much less that the court of appeals' decision rejecting this claim was contrary to or involved an unreasonable application of clearly established federal law. Accordingly, this claim does not entitle him to relief.

### 3.8. Sufficiency of the Evidence (Claims 7 and 8)

"The applicable Supreme Court precedent regarding the sufficiency of the evidence is well established: 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the

essential elements of the crime beyond a reasonable doubt.'" *Saxon v. Lashbrook*, 873 F.3d 982, 987-88 (7th Cir. 2017) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

Robbins asserts that the evidence with respect to count three of the amended complaint—sexual contact with Emma between December 1, 2009, and April 5, 2010—was insufficient because Emma testified that she did not remember if she and Robbins had their clothes on. (ECF No. 22-1 at 8.)

Emma testified as follows in response to the prosecutor's questions:

Q: Okay, when was the other time?

A: The last time?

Q: Yeah.

A: On the couch again, I think.

Q: Okay, and what happened that time?

A: Same thing.

Q: And which way were you laying that time, on your front on your back?

A: I think I was lying on my back.

Q: And did Shane take your clothes off?

A: I don't remember.

Q: Did he have his clothes off?

A: I don't remember either.

Q: The last time that he -- did he do anything with his private to your private; did he touch it?

A: Yeah.

(ECF No. 26-12 at 53.)

To sustain a conviction under Count 3, which alleged sexual contact rather than sexual intercourse, Emma was not required to testify that her and Robbins's clothes were removed. It is unnecessary for the court to address any other supportive evidence because Emma's affirmative answer to the prosecutor's question, "did he do anything with his private to your private; did he touch it?" was sufficient, by itself, to sustain Robbins's conviction for Count 3.

Robbins also argues that the evidence was insufficient with respect to counts two and three because the nurse who examined Emma indicated in her report that there was no vaginal, anal, or oral penetration. (ECF No. 22-1 at 8.) The Sexual Assault Report form completed by the nurse includes a section for providing details of the assault, such as the date and time of the assault and whether a weapon was used, as well as check boxes to indicate the acts committed. (ECF No. 22-1 at 23.) Next to "Vaginal penetration," Anal penetration," and "Oral penetration," the "No" box is checked. (ECF No. 22-1 at 23.) Written in the space next to these checkboxes is, "Penis to Labia majora & minor." (ECF No. 22-1 at 23.)

With regard to Count 3, the fact that the nurse indicated an absence of penetration was immaterial. Aside from the fact that it is unclear if the nurse's physical

examination was related to this much earlier assault, the state did not allege in Count 3 that there was penetration. Rather, it alleged "sexual contact." (ECF No. 26-7 at 57); *see also* Wis. Stat. § 939.22(34) (2009-2010) (defining sexual contact).

With respect to Count 2, where the state *did* allege that Robbins engaged in sexual intercourse with the victim (ECF No. 26-7 at 56), there is no requirement that boxes checked on a nurse's sexual assault report correspond to the defendant's conviction. It is not as if the nurse's form is a charging document like a complaint or an information where the defendant can be convicted only of offenses that match the boxes checked. Beyond that, there is nothing inconsistent between Robbins's conviction for sexual intercourse with a child and an absence of vaginal penetration. Under Wisconsin law, in the context of sexual assault of a child, sexual intercourse "means vulvar[2] penetration … however slight …." Wis. Stat. § 948.01(6) (2009-2010); *see also* Wis. Stat. § 939.22(36). Thus, vaginal penetration is not required.

Having reviewed the record, the court agrees with the court of appeals' conclusion: "There is no issue of arguable merit regarding the sufficiency of the evidence." *Robbins*, 2014 Wisc. App. LEXIS 1074, at *2.

---

[2] Although "vagina" is often used colloquially (including by witnesses in this action and by the court in this decision) to refer to both the internal and external portions of the female genitalia, the proper term for the external portion of the female genitalia is the vulva, while vagina refers to the internal reproductive tract that connects the vulva to the uterus. *See* Oxford English Dictionary, vulva, *n.* and vagina, *n.*

### 3.9. Pre-AEDPA Standard of Review (Claims 1 and 9)

When a state court did not consider the merits of a fairly presented constitutional claim (and did not reject the claim for adequate and independent state law grounds), the deferential AEDPA standard of review does not apply. *See Cone v. Bell*, 556 U.S. 449, 472 (2009). "Instead, the claim is reviewed *de novo.*" *Id.*; *see also Warren*, 712 F.3d at 1098; *Oswald*, 374 F.3d at 477.

### 3.10.    Adequate Notice of Location of April 6, 2010 Incident (Claim 1)

Robbins asserts that it was not until Emma's testimony at trial that it was first alleged that the April 6, 2010 incident occurred on the couch. (ECF No. 22-1 at 3.) He argues that he was prejudiced because, if he had known that Emma alleged the assault occurred on the couch, he could have called Emma's four-year-old brother to testify because he had also been sitting on the couch. (ECF No. 22-1 at 4.)

The Sixth Amendment is explicit that a defendant must "be informed of the nature and cause of the accusation." This guarantee, incorporated against the states under the Fourteenth Amendment, *Cole v. Arkansas*, 333 U.S. 196, 201 (1948), means that "a criminal defendant must receive adequate notice of the charges against him so that he may defend himself against those charges." *Bae v. Peters*, 950 F.2d 469, 478 (7th Cir. 1991). "[A] charge is sufficiently specific when it contains the elements of the crime, permits the accused to plead and prepare a defense, and allows the disposition to be used as a bar in a subsequent prosecution." *Fawcett v. Bablitch*, 962 F.2d 617, 618 (7th Cir.

1992). "[A] last-minute change in the charge could prejudice a defendant's opportunity to defend himself; if that prejudice is severe enough, a due process violation could occur." *Bae*, 950 F.2d at 478.

In support of his claim Robbins points to *People v. Morris*, 61 N.Y.2d 290, 473 N.Y.S.2d 769, 461 N.E.2d 1256 (1984). (ECF No. 22-1 at 4.) However, *Morris* does not reflect the constitutional standard. *Fawcett*, 962 F.2d at 619. The proper standard is an objective assessment of whether the charges were sufficient to enable the defendant to mount an adequate defense. *Id.* at 618 (citing *Hamling v. United States,* 418 U.S. 87, 117 (1974)).

It appears that the charges are silent as to where in the home the April 6, 2010 assault occurred (the court has only the first pages of the amended complaint; neither the probable cause portion of the complaint nor the criminal information appear in the record). Robbins had failed to show that this detail was constitutionally required.

However, Robbins points to discovery wherein Emma reported that the assault occurred in the bedroom, as well as other discovery in which there was no mention of the location. (ECF No. 22-1 at 3.) But a variation between pre-trial discovery and trial evidence does not offend the Sixth Amendment. Rarely is a trial devoid of such surprises; such is the nature of litigation.

Moreover, even if the court were to conclude that the charging documents should have alleged specifically where in the house the assault occurred, Robbins has failed to

show he was prejudiced. Following Emma's testimony that there were two assaults on April 6—the first on the couch and a second shortly thereafter in the bedroom—Robbins could have called Emma's younger brother to testify. Thus, he had time enough to cure any prejudice that might have resulted from this information having not been disclosed earlier. But, as explained above, Robbins's trial counsel reasonably decided not to call Emma's brother to testify.

Accordingly, Robbins's Sixth Amendment right to adequate notice of the charges against him was not violated.

### 3.11.    Prosecutor "Mis-Conduct by False Mis-Leading Testimony" (Claim 9)

Robbins argues that the prosecutor engaged in misconduct when he questioned Emma at the trial. He asserts that the prosecutor "tr[ied] to coach her to get the response he wants." (ECF No. 21-1 at 8.)

The court has closely reviewed the whole of the state's direct examination of Emma (ECF No. 26-12 at 43-56) and finds nothing even remotely approaching misconduct by the prosecutor. Moreover, in any event, Robbins did not object at trial and thus forfeited any objection. And the claim cannot be revived through the lens of ineffective assistance of counsel because, as noted, there was nothing that would have caused any reasonable attorney to raise an objection.

Robbins's complaint seems grounded in what may have been the prosecutor's efforts to address Emma's apparent confusion to his questions. For example, when the

prosecutor asked about the "first time" in apparent reference to the assault that occurred when she was home sick, Emma instead began to discuss the events of April 6. (ECF No. 26-12 at 45-46.) After what may have been some initial confusion on his part, rather than redirect her, the prosecutor shifted his questions to the events of April 6. (ECF No. 26-12.) It was also during this questioning that Emma referred to the assault as having occurred on the couch, which Robbins argues had not been previously alleged.

A prosecutor does not engage in misconduct because he elicits from a witness testimony that differs from a prior statement. Again, such variations are a routine part of litigation. While a defense attorney may want to highlight inconsistencies in an attempt to impeach a witness, it is wholly appropriate for a prosecutor to rely on the testimony. Robbins is not entitled to relief on this claim.

**4. Conclusion**

Robbins forfeited his claims by failing to comply with this court's clear order to submit an initial brief outlining the legal basis for his claim. Even if the court were to look past this failure, Robbins procedurally defaulted the claims identified above as numbers 2, 6, 10, 11, and 12 because the Wisconsin Court of Appeals rejected them for adequate and independent state law grounds. The remainder of Robbins's claims would fail on their merits. He was adequately informed of the charges against him (Claim 1), and he was not denied his right to an impartial jury (Claim 3). His trial counsel was not ineffective for not calling an expert or certain lay witnesses. (Claims 4 and 5.) The

evidence was sufficient to sustain all his convictions. (Claims 7 and 8.) And the prosecutor did not engage in any misconduct in his direct examination of Emma. (Claim 9.) Accordingly, the court must deny Robbins's petition for a writ of habeas corpus.

Finally, the court concludes that Robbins has failed to make a substantial showing of a denial of constitutional right. *See* 28 U.S.C. § 2253(c)(2); Rule 11 of the Rules Governing Section 2254 Cases. Therefore, the court will deny him a certificate of appealability.

**IT IS THEREFORE ORDERED** that Robbins's petition for a writ of habeas corpus is denied and this action is dismissed. The court denies Robbins a certificate of appealability. The Clerk shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 23rd day of February, 2022.

WILLIAM E. DUFFIN
U.S. Magistrate Judge